UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MELISSA NEWTON,

                    Plaintiff,

          v.

WHOLE FOODS MARKET,

                    Defendant.

---

No. 20-CV-3993 (RA)

<u>OPINION & ORDER</u>

RONNIE ABRAMS, United States District Judge:

*Pro se* Plaintiff Melissa Newton, who suffers from bipolar disorder and schizophrenia, was formerly employed as a cashier at Whole Foods.  On December 7, 2019, after 11 months of employment, she was put on administrative leave following an altercation with several of her managers inside the store.  A number of Plaintiff's co-workers reported that she appeared to be intoxicated that day.  A few days later, she was notified of her termination.  Plaintiff subsequently brought this action against Defendant Whole Foods, alleging that Whole Foods discriminated against her on the basis of her disability and gender and retaliated against her, in violation of the Americans with Disabilities Act ("ADA") and the New York State Human Rights Law ("NYSHRL").  Now before the Court is Defendant's motion for summary judgment.  For the reasons that follow, the motion is granted.

## BACKGROUND

The following facts are drawn from Defendant's Rule 56.1 statement, as well as the declarations and exhibits submitted in connection with its summary judgment motion.[1]

---

[1] Defendant served a Local Civil Rule 56.2 notice on Plaintiff in light of her *pro se* status, which apprised her of the requirements of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1.  *See* Dkts. 38-1 (notice);

## I.    Factual Background

Plaintiff began working for Whole Foods as a cashier in its Tribeca store on January 18, 2019. Def.'s 56.1 Stmt. ¶ 1.  Whole Foods cashiers are permitted to take one paid 15-minute break and one unpaid 30-minute break during each shift.  *Id.* ¶ 8.  These breaks are always scheduled in advance when the weekly work schedule is developed.  *Id.* ¶ 9.  Cashiers are not allowed to simply take their breaks as they please.  *Id.* ¶ 9.  At times, even scheduled breaks may be delayed, depending on factors such as customer flow and whether other employees are available to step in to relieve the cashier who is taking a break.  *Id.* ¶ 10.  During her 11 months of employment at Whole Foods, Plaintiff was unable to take her scheduled break at the scheduled time on approximately seven occasions.  *Id.* ¶ 37.

Plaintiff suffers from schizophrenia and bipolar disorder.  *Id.* ¶ 17.  Although she has been prescribed medication by a doctor for these conditions, she stopped taking her medication and stopped attending therapy while she was employed at Whole Foods.  *Id.* ¶ 57.  When she fails to take her medication, Plaintiff becomes susceptible to "mood swings" and feels "overwhelmed"

---

38-2 (certification of service).  The notice specifically informed her that "[e]ach numbered paragraph in . . . [Defendant's] statement of material facts . . . will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph," which "must be followed by citation to evidence which would be admissible." Dkt. 38-1 (citing Local Civ. R. 56.1(c)-(d)).

    Plaintiff submitted a response to Defendant's Rule 56.1 statement, which indicates that the bulk of Defendant's assertions of fact are undisputed.  However, with respect to the statements that Plaintiff claims are in dispute, she failed to cite any evidence from the record in support of her contentions.  It is well-settled that "*[p]ro se* litigants are . . . not excused from meeting the requirements of Local Rule 56.1."  *S.E.C. v. Tecumseh Holdings Corp.*, 765 F. Supp. 2d 340, 344 n.4 (S.D.N.Y. 2011); *see also Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813, 2014 WL 1053774, at *2 (S.D.N.Y. Mar. 13, 2014) ("[E]ven a *pro se* plaintiff must offer some evidence that would defeat a motion for summary judgment.").  Nevertheless, in light of the "special solicitude" afforded to *pro se* litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court will "in its discretion opt to conduct an assiduous review of the record" in deciding the instant motion, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001).  *See also Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the Court has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1.").

and "angry." *Id.* Additionally, not being able to take her scheduled breaks at the scheduled time caused Plaintiff to "be uncomfortable," "mess[ed] up [her] time effectiveness," and led her to have less of a "positive outlook on work." *Id.* ¶ 36; Pl.'s Dep. Tr. at 243.

Although Plaintiff alleged in her complaint that she "told her supervisors . . . that it was important to keep her breaks on time to keep her stable, and to limit her anxiety," Compl. at 6, during her deposition in this matter, she identified only two instances when she may—or would—have informed someone at Whole Foods about her disability. Def.'s 56.1 Stmt. ¶ 21. She testified that the first time was when she applied for the position, stating that "if" Whole Foods had inquired about her past income, she would have disclosed that she received social security benefits, which would have "indicate[d] that [she] had a disability." *Id.* ¶ 22. The second time was in connection with a request for time off. *Id.* ¶ 28. Plaintiff testified that she told a supervisor named Erica "something to do with [her] disability," but she could not recall what she said. *Id.* ¶ 28. Erica did not have managerial authority over Plaintiff. *Id.* ¶ 26. The form that Plaintiff filled out to request to leave early from her scheduled shift made no mention of any disability or medical condition. *See* Rosenblatt Decl. Ex. C.

On December 7, 2019, Qui Chung, a supervisor at Whole Foods, reported observing that Plaintiff "smelled like alcohol," her "eyes were bloodshot red," and her "speech was very sluggish and incoherent," which was apparently unlike her. Def.'s 56.1 Stmt. ¶ 38; Simpson Decl. Ex. D at 8. Chung escalated the matter to assistant manager Mitchell Goodson, who similarly observed that Plaintiff's "breath smelled like alcohol" and her eyes were "bloodshot." Simpson Decl. Ex. D at 7. Goodson, in turn, reported her observations to assistant store managers Chad Barclay and Timeisha Brisco, who called Plaintiff up to their upstairs office. Def.'s 56.1 Stmt. ¶¶ 44-46. As she was being walked upstairs by Barclay, Plaintiff repeatedly asked, loudly, why she was being

3

brought to the office.  *Id.* ¶ 46.  According to Barclay, once inside the office, Plaintiff appeared to have trouble "properly express[ing] herself."  Simpson Decl. Ex. D at 1.  She then became "upset" and stated that "[Brisco] is always a problem," and that she "[didn't] know what the fuck [was] [Barclay's] problem."  *Id.*  At that point, Barclay made the decision to place Plaintiff on paid administrative leave until further notice.  *Id.*  When she did not immediately leave, Barclay escorted her out of the store.  *Id.*

Four other Whole Foods employees—in addition to those already mentioned—separately filled out "record of behavior" forms on December 7, 2019 to document their observations with respect to Plaintiff and her conduct that day.  They used the following words to describe her behavior: "aggressive," "loud," "drunk," "argumentative," "combative," "confused," "swaying," and "annoyed."  *See generally* Simpson Decl. Ex. D at 3-13.  These employees also observed Plaintiff "puffing up her jacket aggressively, as if preparing to fight" and "using profanity," and further noted that her "arms [were] flailing," and her "body language was hostile."  *Id.* Additionally, the store's security guard, who was not an employee of Whole Foods, submitted a statement via email.  In it, he stated that "[Plaintiff] became belligerent towards both [Barclay and Brisco], hurling profanity laced vernacular at the two."  Simpson Decl. Ex. F.  He also noted: "I concur with [Barclay and Brisco's] assessment that [Plaintiff] was inebriated or she ingested a narcotic as her speech was slurred and she was slightly unsteady on her feet."  *Id.*  Plaintiff, however, denies having been under the influence of alcohol or drugs on that day.  Def.'s 56.1 Stmt. ¶ 55.

At some point in the days following December 7, Barclay and Brisco had a discussion with Tribeca store manager Mariama Weir as well as Brian Simpson from the company's HR department about what had transpired.  *Id.* ¶ 64.  In doing so, they consulted the witness statements

and documentation of the incident. *Id.* They ultimately decided, unanimously, to terminate Plaintiff's employment for what they considered to be "outrageous behavior" and a "major infraction" of Whole Foods' policy. Simpson Decl. Ex. G (separation form). On December 12, 2019, Barclay and Brisco called Plaintiff to notify her of her termination. Def.'s 56.1 Stmt. ¶ 70.

## II.   Procedural History

On December 20, 2019, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 84. One week later, the EEOC issued a notice of right to sue. *Id.* ¶ 87. That notice advised Plaintiff that any lawsuit brought under the ADA had to be filed with 90 days. *Id.* ¶ 88. Plaintiff filed the instant action on May 21, 2020, almost two months after the 90-day period expired.

## LEGAL STANDARD

Summary judgment is appropriate pursuant to Rule 56 of the Federal Rules of Civil Procedure where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[2] And a dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. *See Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). If it satisfies this burden, "the opposing party must come forward with specific evidence demonstrating the

---

[2] Unless otherwise noted, case quotations omit all internal quotation marks, citations, alterations, and footnotes.

existence of a genuine dispute of material fact." *Id.* In doing so, it "must provide more than conclusory allegations . . . and show more than some metaphysical doubt as to the material facts." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010). Courts must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). They will grant summary judgment only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995).

*Pro se* litigants are afforded "special solicitude" on motions for summary judgment. *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Courts must read the pleadings, briefs, and opposition papers of *pro se* litigants "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999); *see also Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (stating that the submissions of *pro se* litigants are "held to less stringent standards than formal pleadings drafted by lawyers"). Nevertheless, "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (noting that the obligation to read *pro se* pleadings liberally "does not relieve plaintiff of [her] duty to meet the requirements necessary to defeat a motion for summary judgment"). "[A] *pro se* party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995); *see also Saldana v. Local 32B–32J Serv. Employer Int'l Union*, No. 03 Civ. 1853, 2005 WL 66895, at *2 (S.D.N.Y. Jan. 12, 2005) ("Even a *pro se* plaintiff, however, cannot withstand a motion for summary judgment by relying merely on the allegations of the complaint. Rather, when confronted with evidence of facts that would

6

support judgment in the defendant's favor as a matter of law, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts.").

## DISCUSSION

Plaintiff asserts in her complaint that Defendant unlawfully failed to honor her scheduled breaks, failed to accommodate her disability, failed to promote her, terminated her because of her disability and gender, and retaliated against her, in violation of the ADA and the NYSHRL. Defendant moves for summary judgment on all counts.  The motion is granted.

### I.      Disability Discrimination

Employment discrimination claims under the ADA and the NYSHRL are subject to the familiar burden-shifting standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).  "Under *McDonnell Douglas*, a plaintiff bears the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination; it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination."  *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014); *see also Littlejohn v. City of N.Y.*, 795 F.3d 297, 307–08 (2d Cir. 2015).

"Discrimination claims under the ADA may be brought under a theory of adverse employment action or of failure to provide reasonable accommodation."  *Berger v. N.Y. City Police Dep't*, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018).  To establish a *prima facie* case of employment discrimination under the adverse employment action theory, a plaintiff must show "(a) that [her] employer is subject to the ADA; (b) that [she] is disabled within the meaning of the ADA or perceived to be so by [her] employer; (c) that [she] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that [she] suffered an

7

adverse employment action because of [her] disability." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).  And to establish a *prima facie* claim for failure to reasonably accommodate a disability, a plaintiff must show that: "(1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodations, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 577 (S.D.N.Y. 2008) (citing *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004)).  While "the burden of establishing a *prima facie* case is 'minimal' . . . a plaintiff cannot do so with 'purely conclusory allegations of discrimination, absent any concrete particulars.'" *Wein v. N.Y. City Dep't of Educ.*, No. 18 Civ. 11141 (PAE), 2020 WL 4903997, at *12 (S.D.N.Y. Aug. 19, 2020) (citations omitted).

As an initial matter, the Court agrees with Defendant that Plaintiff's ADA claim is time-barred.  To be timely, a claim brought under the ADA must be filed in court within 90 days of the claimant's receipt of the EEOC's right to sue letter.  *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) (citing 42 U.S.C. §§ 2000e–5(f)(1)).  Here, Plaintiff filed this lawsuit almost five months after she received the EEOC's notice of right to sue.  Moreover, the doctrine of equitable tolling does not save her claim, as it only applies in "rare and exceptional circumstances." *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003).  Plaintiff acknowledged during her deposition that her failure to timely file this lawsuit was attributable to the fact that she "read the letter wrong" and was "busy," Pl.'s Dep. Tr. at 195–96, which does not justify the extraordinary remedy of equitable tolling.

Plaintiff's NYSHRL claims are not time-barred, however, and "[NYSHRL] disability discrimination claims are governed by the same legal standards as federal ADA claims," *Rodal*,

8

369 F.3d at 117 n.1.  The Court thus applies ADA law in its analysis of the NYSHRL claims.

*Failure to Accommodate*

Plaintiff's claim that Defendant failed to accommodate her disability by allowing her to take her scheduled breaks at the scheduled time fails at the *prima facie* stage.  Assuming *arguendo* that Plaintiff's conditions constitute a disability within the meaning of the ADA,[3] she still cannot sustain a failure to accommodate claim because she unequivocally testified that she never requested an accommodation for her disability.  Def.'s 56.1 Stmt. ¶ 19 (citing Pl.'s Dep. Tr. at 113) ("Q: Did you ever request an accommodation for your disability?  A: No.").  The law is clear that "it is the responsibility of an individual with a disability to inform the employer that an accommodation is needed."  *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184-85 (2d Cir. 2006).  "Defendant[] cannot be held liable for failing to provide reasonable accommodations when it had no actual or constructive knowledge of the need for any accommodations."  *MacEntee v. IBM*, 783 F. Supp. 2d 434, 444 (S.D.N.Y. 2011), *aff'd*, 471 F. App'x 49 (2d Cir. 2012); *see also Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999) ("An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation."); *Dooley v. Jet Blue Airways Corp.*, 636 F. App'x 16, 18-19 (2d Cir. 2015) ("[A]n employer cannot refuse to make an accommodation that it was never asked to make.").

Nor is there any basis to conclude that Defendant otherwise had knowledge of Plaintiff's disability.  *See Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 82 (2d Cir. 2005) ("We . . . join our

---

[3] *But see Johnson v. Maynard*, No. 01 CIV. 7393 (AKH), 2003 WL 548754, at *4 (S.D.N.Y. Feb. 25, 2003) (holding that a plaintiff was not disabled within the meaning of the ADA where she "had medication available to her, and knew that she could function normally if she took it" but "neglected to avail herself of such corrective measures") (citing *Hewitt v. Alcan Aluminum Corp.*, 185 F. Supp. 2d 183, 189 (N.D.N.Y. 2001) ("A plaintiff who does not avail himself of corrective medication is not a qualified individual under the ADA.")).

sister circuits in concluding that a defendant's discriminatory intent cannot be inferred, even at the *prima facie* stage, from circumstances unknown to the defendant.").  Plaintiff testified at her deposition that she disclosed her disability on only two occasions.  First, she stated that "if" Whole Foods had asked about her past income during the hiring process, she would have revealed that she received social security benefits.  This, of course, does not amount to evidence that she told anyone about her disability—just that she might have, hypothetically, and only by implication. Second, Plaintiff testified that she told a supervisor named Erica "something to do with [her] disability" in connection with a request for time off.  This too fails to establish notice to Defendant because there is no evidence in the record that Erica in turn told anyone else, much less an individual with the requisite managerial authority to actually accommodate Plaintiff's request.  *See Woodman*, 411 F.3d at 87 ("To defeat summary judgment, Woodman was obliged to do more than produce evidence that *someone* at Fox knew her age.  She was obliged to offer evidence indicating that persons who actually participated in her termination decision had such knowledge.") (emphasis in original).

The fact that Plaintiff may have complained about not being able to take her scheduled breaks on time is also insufficient to establish notice.  *See* Pl.'s Dep. Tr. at 93-94.  There is no evidence that she ever connected those complaints to her disability, such that Defendant knew or should have known that the request "was an accommodation of a disability rather than a personal preference."  *Maira v. Sti-Co Indus., Inc.*, No. 20-CV-447 (LJV) (JJM), 2021 WL 1229598, at *7 (W.D.N.Y. Feb. 24, 2021), *report and recommendation adopted*, 2021 WL 1226431 (W.D.N.Y. Mar. 31, 2021); *see also MacEntee*, 783 F. Supp. 2d at 444 (dismissing a failure to accommodate claim where the plaintiff requested a "patient trainer" from her employer, but did not mention that she needed one "because of her depression").

Plaintiff did allege in her complaint that she "[o]n several occasions . . . told her supervisors . . . that it was important to keep her breaks on time to keep her stable, and to limit her anxiety," and further asserted that "[t]his informed her supervisors that she needed to have her breaks on time as a reasonable accommodation . . . given her disability."  Compl. at 6.  Even accepting her allegation as true, which the Court may do on this summary judgment motion in light of Plaintiff's *pro se* status,[4] the statement nevertheless fails to establish that she ever requested an accommodation.  Plaintiff attributed her need to have on-time breaks to general "anxiety," rather than to a medical condition or disability.  This is insufficient to establish notice.  *See Bartlett v. N.Y. State Bd. of Law Examiners*, 226 F.3d 69, 86 (2d Cir. 2000) ("If [Plaintiff's] requests for accommodations did not provide enough information for the Board to determine she was disabled, the Board would not be liable."); *Gaidasz v. Genesee Valley Bd. of Co-op. Educ. Sys. (Boces)*, 791 F. Supp. 2d 332, 340 (W.D.N.Y. 2011) (finding that a plaintiff's "oblique references to feelings of discomfort and anxiety during social gatherings and [his] preference not to attend them, without any mention of a disabling condition, medical diagnosis or medical need for accommodations" could not have plausibly put his employer "on notice of the true nature of his complaints").  Nor is it consistent with Plaintiff's admission, under oath, that she never requested an accommodation. *See AB ex rel. EF v. Rhinebeck Cent. Sch. Dist.*, 361 F. Supp. 2d 312, 316 (S.D.N.Y. 2005) ("[J]ust as the court should not accept an affidavit that contradicts deposition testimony, it should also not allow inconsistent allegations made in a complaint to defeat summary judgment in the face of

---

[4] "Although a plaintiff's *pro se* status does not allow [her] to rely on conclusory allegations or unsubstantiated speculation to overcome a motion for summary judgment . . . where a plaintiff 'verifies [her] complaint by attesting under penalty of perjury that the statements in the complaint are true to the best of [her] knowledge,' the 'verified complaint is to be treated as an affidavit for summary judgment purposes.'" *Parker v. Fantasia*, 425 F. Supp. 3d 171, 175 n.1 (S.D.N.Y. 2019) (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

contradictory testimony either."); *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 279 (S.D.N.Y. 2002) ("Faced with [a] confounding contradiction [between the plaintiff's complaint and her sworn testimony], the Court has no basis for accepting as true the vague statements in [the] complaint as opposed to her sworn testimony."); *Latouche v. Tompkins*, No. 09-CV-308 NAM RFT, 2011 WL 1103045, at *2 (N.D.N.Y. Mar. 23, 2011) (considering allegations in the *pro se* plaintiff's verified complaint, but only to the extent they "do not contradict his deposition testimony").

Accordingly, because there exists no genuine dispute that Plaintiff never requested an accommodation for her disability, her failure to accommodate claim cannot survive Defendant's motion for summary judgment.

*Failure to Promote*

Plaintiff's failure to promote claim similarly falters at the *prime facie* stage. "To make out a *prima facie* case of failure to promote, Plaintiff [is] required 'to allege that she applied for a specific position and was rejected therefrom, rather than merely asserting that on several occasions she . . . generally requested promotion.'" *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 679 (S.D.N.Y. 2012) (citing *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998)). It is undisputed that she never requested or applied for a promotion. Pl.'s Dep. Tr. at 246 ("Q: Okay, did you ever request a promotion while working at Whole Foods?  A: No."); *id.* ("Q: [Y]ou at no point requested a promotion, correct?  A: Correct."). Because Plaintiff never applied for any specific position, she could not have been "rejected under circumstances that would give rise to an inference of . . . discrimination." *Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284, 300 (S.D.N.Y. 2012).

*Unlawful Termination*

Lastly, Plaintiff has also failed to establish a *prima facie* claim for unlawful termination because, as already discussed, the record in this matter is devoid of evidence that anyone at Whole Foods with managerial authority had knowledge of Plaintiff's disability. But even assuming that Plaintiff had satisfied her *prima facie* burden, the result would be the same because there is no genuine dispute that Defendant's proffered non-discriminatory reason for terminating Plaintiff was not pretextual. *See Idrees v. City of N.Y.*, 04 Civ. 2197 (LAK) (GWG), 2009 WL 142107, at *9 (S.D.N.Y. Jan. 21, 2009) ("Second Circuit case law makes clear that a court may simply assume that a plaintiff has established a *prima facie* case and skip to the final step in the *McDonnell Douglas* analysis, as long as the employer has articulated a legitimate nondiscriminatory reason for the adverse employment action.").

Defendant asserts that it terminated Plaintiff's employment in response to her misconduct on December 7, 2019. Whole Foods' employee handbook provides that employees may be terminated immediately and without further warning for a "major infraction." Simpson Decl. Ex. B at 1. It defines "major infractions" to include "threatening" or "outrageous" behavior towards others, as well as "[u]sing or being under the influence of alcohol or controlled substances at work." *Id.* at 1-2. In support of its contention that it terminated Plaintiff for conduct it considered to be a "major infraction," Defendant submitted what can only be described as a mountain of evidence demonstrating that on December 7, 2019, Plaintiff appeared to be intoxicated at work, and acted in an aggressive manner towards other employees. Defendant has presented contemporaneous statements from no less than two of Plaintiff's managers, five of her co-workers, and one security guard, many of whom described her behavior that day as "combative," "loud," or "profane." *See generally* Simpson Decl. Ex. D. Several witnesses observed that Plaintiff "smelled

13

like alcohol" and that her speech was "slurred" or "incoherent."  *See id.*  Additionally, both Mariama Weir and Brian Simpson—two of the four decision-makers who unanimously agreed that termination of Plaintiff's employment was warranted—submitted declarations stating that they decided to fire Plaintiff for her misconduct, and that they were unaware of her disability.  Weir Decl. ¶¶ 2-3; Simpson Decl. ¶¶ 14-15.  Finally, Defendant has also submitted evidence that other Tribeca store employees have been terminated for engaging in similar conduct.  *See* Def.'s 56.1 Stmt. ¶ 69.  "The application of neutral company policies is by definition a legitimate, nondiscriminatory reason for a particular action."  *Marinacci v. U.S. Postal Serv.*, 403 F. Supp. 3d 116, 127 (E.D.N.Y. 2017).

In light of Defendant's evidence providing a legitimate, non-discriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to establish a triable issue as to whether the proffered reason is pretextual.  A plaintiff can demonstrate pretext by offering either direct or circumstantial evidence of discrimination.  *See Tex. Dep't. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981).  Plaintiff has not offered any here, nor has the Court come across such evidence in the record.

Plaintiff's conclusory assertion that each of the abovementioned witness statements "is false," Pl.'s 56.1 Resp. ¶ 58, is unavailing.  To survive a motion for summary judgment, the non-moving party must "show more than some metaphysical doubt as to the material facts."  *Gorzynski*, 596 F.3d at 101.  At this stage, "[c]onclusory and speculative allegations will not suffice to demonstrate discriminatory intent."  *Henny v. N.Y. State*, 842 F. Supp. 2d 530, 553 (S.D.N.Y. 2012).  Plaintiff's denial that she was intoxicated on December 7, 2019 similarly fails to create a triable issue of fact as to pretext—not only because it is an assertion unsupported by evidence—but also because "the question in any discrimination case is not whether [the] defendant's decision to fire

14

[the] plaintiff was correct but whether it was discriminatory." *Baffa v. STAT Health Immediate Med. Care, P.C.*, No. 11-CV-4709 (JFB) (GRB), 2013 WL 5234231, at *11 (E.D.N.Y. Sept. 17, 2013); *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff . . . the factual validity of the underlying imputation against the employee is not at issue."); *O'Leary v. N.Y. State Unified Ct. Sys.*, No. 05-CV-6722 (HB), 2007 WL 2244483, at *7 (S.D.N.Y. Aug. 6, 2007) ("The Court's role is not to evaluate the wisdom of personnel decisions, but merely to determine whether the decisions were rational and non-discriminatory.").

"[W]here there is overwhelming evidence that the employer had a legitimate reason to [take an adverse action against] an employee, the employee must present more than [a] few isolated pieces of contrary evidence to survive summary judgment." *Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114, 125 (2d Cir. 2008). Here, Plaintiff has failed to provide even a few isolated pieces of contrary evidence; indeed, she has offered no evidence from the record whatsoever to rebut Defendant's well-documented and non-discriminatory reason for her termination. Because a reasonable fact finder could not conclude that Defendant terminated Plaintiff on account of her disability, Defendant is entitled to summary judgment on Plaintiff's disability discrimination claims.

## II.     Gender Discrimination

*Failure to Honor Breaks*

Plaintiff claims that Defendant discriminated against her because of her gender because male cashiers were allegedly allowed to take their breaks whenever they wanted, but she was not. As with her disability discrimination claim, Plaintiff must first make out a *prima facie* case of gender discrimination by establishing that (1) she is a member of a protected class; (2) her job

performance was satisfactory; (3) she suffered an adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination.  *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006).

Here, Plaintiff fails yet again to satisfy her *prima facie* burden because Defendant's purported refusal to honor scheduled breaks does not constitute an adverse employment action.  It is well-settled that an employment action "must cause a 'materially adverse change in the terms and conditions of employment,' and not just 'mere inconvenience,' in order to qualify as 'adverse.'"  *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007); *see also Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71–72 (2d Cir. 2019) ("An adverse employment action must be more disruptive than a mere inconvenience or an alteration of job responsibilities and might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.").  The Second Circuit has conclusively held that "[b]eing unable to take a break"—even if it is "related to [one's] disability"—is "not the type of demotion, pay cut, or significantly diminished responsibility that are the tell-tale signs of material adverse employment actions."  *Id.* at 72; *see also Katz v. Beth Israel Med. Ctr.*, No. 95 CIV. 7183 AGS, 2001 WL 11064, at *14 (S.D.N.Y. Jan. 4, 2001) (finding the assignment of an "unfavorable schedule" to not be an adverse employment action).

*Unlawful Termination*

To the extent that Plaintiff is staking her gender discrimination claim on her ultimate termination, Plaintiff similarly fails to establish a *prima facie* case because there is no evidence in the record giving rise to an inference of gender-based animus.  It is undisputed that while she was employed at Whole Foods, Plaintiff was never subjected to any "invidious comments" about her

16

protected group, *Littlejohn*, 795 F.3d at 312.  Def.'s 56.1 Stmt. ¶ 73.  The only evidence she offers

in support of her gender discrimination claim is her testimony that Barclay "had a[n] attitude as if

he needed to be respect[ed] as a man."  *Id.* ¶ 83 (citing Pl.'s Dep. Tr. at 134).  This is plainly too

vague and speculative to serve as evidence of discriminatory motivation.  Further, as already

discussed, even if Plaintiff could make out a *prima facie* case of gender discrimination, there is

overwhelming evidence in the record indicating that Defendant fired Plaintiff for a legitimate, non-

discriminatory reason.   Where, as here, Plaintiff has not offered—and the Court cannot

independently discern from the record—any evidence of pretext, Defendant is entitled to summary

judgment on the gender discrimination claim.

## III.    Retaliation

Finally, Plaintiff's assertion that Defendant retaliated against her for complaining about

not getting her breaks on time fails as well.  To make out a *prima facie* case of retaliation, a plaintiff

must make four showings: that (1) she engaged in a protected activity; (2) her employer was aware

of this activity; (3) the employer took adverse employment action against her; and (4) a causal

connection exists between the alleged adverse action and the protected activity.  *Summa v. Hofstra

Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).  Protected activity within the meaning of the NYSHRL

is conduct that "oppos[es] or complain[s] about unlawful discrimination*." Forrest v. Jewish Guild

for the Blind*, 3 N.Y.3d 295, 313 (N.Y. Ct. App. 2004).  It does not "include the entire gamut of

all complaints concerning employment practices, but rather is limited to actions which complain

or oppose the discriminatory practices prohibited under [the NYSHRL]."  *Mi-Kyung Cho v. Young

Bin Cafe*, 42 F. Supp. 3d 495, 508 (S.D.N.Y. 2013).

It is undisputed that while she was employed at Whole Foods, Plaintiff did not complain

about any discrimination.  Pl.'s Dep. Tr. at 134-35 ("Q: Did you report or complain to anyone at

Whole Foods that you were being -- that you believed you were being discriminated against?  A: No.  Everybody was always complaining about something.  I was usually quiet . . . I didn't talk to them, no.").  The only "complaints" she identified during her deposition were requests to take her scheduled breaks.  *Id.* at 96 ("Q: What you're describing as a complaint about your break, was it limited to reminders that you were giving the team leader about when you wanted to take your break?  A: It was, like, limited to -- to -- it was limited to my -- yes.").  Such "[g]eneralized complaints," unconnected to any statutorily prohibited or allegedly discriminatory conduct, are insufficient to constitute protected activity.  *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012) (citing *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (affirming the district court's holding that the plaintiff failed to state a *prima facie* case of retaliation because generalized complaint was not protected activity)); *see also Ruhling v. Tribune Co.*, No. CV 04–2430 (ARL), 2007 WL 28283, at *21 (E.D.N.Y. Jan. 3, 2007) (holding that an internal complaint of favoritism was not protected activity where the plaintiff had not framed the complaint as involving discriminatory conduct).

Further, even assuming that Plaintiff could state a *prima facie* claim of retaliation, for the reasons discussed above, there is no genuine dispute of fact that Defendant's proffered non-discriminatory reason for terminating Plaintiff's employment was non-pretextual, given the overwhelming evidence in the record that she was fired for committing a "major infraction" of Whole Foods' policy.

As such, no reasonable jury could find in Plaintiff's favor on her claim for gender discrimination.  That claim is thus dismissed.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is granted.  The

Clerk of Court is respectfully directed to terminate the motion pending at docket entry 38, mail a

copy of this order to Ms. Newton, and close the case.

SO ORDERED.

Dated:     September 30, 2022
           New York, New York

_____
Ronnie Abrams
United States District Judge

19